IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARES TRADING S.A., <br><br> Plaintiff, <br><br> v. <br><br> DYAX CORP., <br><br> Defendant. | Civil Action No. _____ <br><br> REDACTED PUBLIC VERSION |

## COMPLAINT

Plaintiff Ares Trading S.A. ("Ares"), by and through its undersigned attorneys, hereby brings this Complaint against Defendant Dyax Corp. ("Dyax") and alleges as follows:

### THE PARTIES

1. Ares is a Swiss corporation with its principal place of business at Zone Industrielle de l'Ouriettaz, 1170 Aubonne, Switzerland.

2. On information and belief, Dyax is a Delaware corporation with its principal place of business at 300 Shire Way, Lexington, Massachusetts 02421-2101.

### JURISDICTION

3. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1332(a)(2) and 2201(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, the action is between a citizen of a State and a citizen or subject of a foreign state and Ares seeks a declaration of the rights and obligations of the parties.

4. This Court has personal jurisdiction over Dyax because Dyax, on information and belief, is a citizen of the State in which this Court is located.

1

## FACTUAL BACKGROUND

5. Ares and Dyax entered into an "Amended and Restated Collaboration and License Agreement" dated November 15, 2006, effective as of September 1, 2006 (the "CLA", attached as Exhibit A), under which Dyax performed research ███████████████ to identify antibodies that bind to targets provided by Ares so that Ares could evaluate the utility of such antibodies as therapeutic products.

6. Under "███████████████" contained in Appendix A to the CLA, Dyax identified antibodies that bind PD-L1 for possible development and use by Ares as therapeutic pharmaceutical products.

7. Under Section 3.1(b) of the CLA, Dyax granted Ares a ███████████████ ███████████████ ███████████████. "CAT" in the CLA refers to "Cambridge Antibody Technology Limited", which upon information and belief, later merged into MedImmune Limited (collectively, "CAT"), and a "███████████████" is a ███████████████ ███████████████.

8. Dyax and CAT entered into a ███████████████ for PD-L1 dated July 20, 2010 ("███████████████, attached in Exhibit B at pp. 5-23"), under which CAT granted Dyax a ███████████████ under the "███████████████" that are identified in Appendix C (also titled "Exhibit C") to the CLA.

9. On information and belief, Dyax paid CAT ███████████████ ███████████████. Ares paid Dyax the "███████████████" associated with PD-L1 as required under Section 4.3 of the CLA. Thereafter, and

2

pursuant to Section 3.1(b)(i) of the CLA, Ares and Dyax entered into a ▮▮▮▮▮ dated October 25, 2010, effective as of July 10, 2010, ▮▮▮▮▮ ▮▮▮▮▮ for PD-L1 ("▮▮▮▮▮, attached in Exhibit C at pp. 1-4").

10. Ares made selections from the antibodies received from Dyax that yielded one preferred antibody. Ares made a number of modifications to that antibody that resulted in a fully human monoclonal antibody to bind and inhibit PD-L1 called "avelumab", which was selected for further development.

11. In March 2017, the U.S. Food and Drug Administration granted Bavencio® (avelumab) accelerated approval for the treatment of adults and pediatric patients twelve years and older with metastatic Merkel cell carcinoma (mMCC), a rare and aggressive skin cancer, including those who have not received prior chemotherapy.

12. On September 21, 2017, the European Commission (EC) granted marketing authorization for Bavencio® as a monotherapy for the treatment of adult patients with mMCC in the 28 countries of the European Union (EU) in addition to Norway, Liechtenstein and Iceland.

13. Bavencio® is a "▮▮▮▮▮" as that term is defined and used in the CLA.

14. Section 4.6 of the CLA specifies that Ares "shall pay to Dyax a ▮▮▮▮▮ royalty on ▮▮▮▮▮ commercialized by" Ares.

15. Section 4.9 of the CLA provides that the royalties payable by Ares to Dyax pursuant to Section 4.6 "shall be payable ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮

3

███████████████████████████████████████

███████████████████████████████████████

███████████ ."

16. Section 1.11 of the CLA defines "█████████" as "█████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████ ."

17. Section 1.9 of the CLA defines "█████████" as "█████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████ ."

18. The CLA does not contain a provision requiring a reduced ("step-down") royalty for Net Sales in any country in the event that the last ████████████ in that country expires before the end of the ███████ period in which royalties under Sections 4.6 and 4.9 are to be paid by Ares to Dyax. In that circumstance, the required royalty payment is ████████████ ████ in each country both before and after expiration of the last ████████████ in that country.

4

19. The First Commercial Sale of Bavencio® in the United States was in March 2017. On information and belief, the last ████████ in the United States expired on September 18, 2018, more than ███ years before the ████████ expiration of the ██████ period after the date of the First Commercial Sale of Bavencio® in the United States.

20. The First Commercial Sale of Bavencio® in Australia was in June 2018. On information and belief, the last ████████ in Australia expired on December 5, 2014. Accordingly, the last ████████ in Australia expired before ████ after the date of the First Commercial Sale of Bavencio® in Australia.

21. The First Commercial Sale of Bavencio® in Austria was in September 2017. On information and belief, the last ████████ in Austria expired on September 16, 2014. Accordingly, the last ████████ in Austria expired before ████ after the date of the First Commercial Sale of Bavencio® in Austria.

22. The First Commercial Sale of Bavencio® in Belgium was in August 2018. On information and belief, the last ████████ in Belgium expired on May 16, 2010. Accordingly, the last ████████ in Belgium expired before ████ after the date of the First Commercial Sale of Bavencio® in Belgium.

23. The First Commercial Sale of Bavencio® in Canada was in December 2017. On information and belief, the last ████████ in Canada expired on February 4, 2014. Accordingly, the last ████████ in Canada expired before ████ after the date of the First Commercial Sale of Bavencio® in Canada.

24. The First Commercial Sale of Bavencio® in Denmark was in December 2017. On information and belief, the last ████████ in Denmark expired on July 9, 2010.

Accordingly, the last ████████ in Denmark expired before ████ after the date of the First Commercial Sale of Bavencio® in Denmark.

25. The First Commercial Sale of Bavencio® in France was in November 2016. On information and belief, the last ████████ in France expired on May 16, 2010. Accordingly, the last ████████ in France expired before ████ after the date of the First Commercial Sale of Bavencio® in France.

26. The First Commercial Sale of Bavencio® in Germany was in October 2017. On information and belief, the last ████████ in Germany expired on September 16, 2014. Accordingly, the last ████████ in Germany expired before ████ after the date of the First Commercial Sale of Bavencio® in Germany.

27. The First Commercial Sale of Bavencio® in Greece was in June 2018. On information and belief, the last ████████ in Greece expired on May 16, 2010. Accordingly, the last ████████ in Greece expired before ████ after the date of the First Commercial Sale of Bavencio® in Greece.

28. The First Commercial Sale of Bavencio® in Japan was in November 2017. On information and belief, the last ████████ in Japan expired on February 4, 2014. Accordingly, the last ████████ in Japan expired before ████ after the date of the First Commercial Sale of Bavencio® in Japan.

29. The First Commercial Sale of Bavencio® in Luxembourg was in October 2018. On information and belief, the last ████████ in Luxembourg expired on May 16, 2010. Accordingly, the last ████████ in Luxembourg expired before ████ after the date of the First Commercial Sale of Bavencio® in Luxembourg.

30. The First Commercial Sale of Bavencio® in the Netherlands was in November 2017. On information and belief, the last ▮▮▮ in the Netherlands expired on May 16, 2010. Accordingly, the last ▮▮▮ in the Netherlands expired before ▮▮▮ after the date of the First Commercial Sale of Bavencio® in the Netherlands.

31. The First Commercial Sale of Bavencio® in Portugal was in July 2018. On information and belief, the last ▮▮▮ in Portugal expired on May 16, 2010. Accordingly, the last ▮▮▮ in Portugal expired before ▮▮▮ after the date of the First Commercial Sale of Bavencio® in Portugal.

32. The First Commercial Sale of Bavencio® in Spain was in February 2018. On information and belief, the last ▮▮▮ in Spain expired on May 16, 2010. Accordingly, the last ▮▮▮ in Spain expired before ▮▮▮ after the date of the First Commercial Sale of Bavencio® in Spain.

33. The First Commercial Sale of Bavencio® in Sweden was in June 2018. On information and belief, the last ▮▮▮ in Sweden expired on May 16, 2010. Accordingly, the last ▮▮▮ in Sweden expired before ▮▮▮ after the date of the First Commercial Sale of Bavencio® in Sweden.

34. The First Commercial Sale of Bavencio® in Switzerland was in October 2017. On information and belief, the last ▮▮▮ in Switzerland expired on May 16, 2010. Accordingly, the last ▮▮▮ in Switzerland expired before ▮▮▮ after the date of the First Commercial Sale of Bavencio® in Switzerland.

35. The First Commercial Sale of Bavencio® in the United Kingdom was in October 2017. On information and belief, the last ▮▮▮ in the United Kingdom expired on

May 16, 2010. Accordingly, the last ███████ in the United Kingdom expired before ███████ after the date of the First Commercial Sale of Bavencio® in the United Kingdom.

36. Section 10.5 of the CLA provides that the CLA "███████████████████████████████████████████████████████████████████████████████████████████████████████████████." Because the CLA specifies ███████████████████████, ███, United States law applies in connection with the governance and construction of the CLA.

37. The royalty provisions of Sections 4.6 and 4.9 of the CLA are unenforceable under United States law because they require Ares to continue paying the same ███████ royalty after expiration of the last ███████ that Ares was required to pay during the life of the ███████, i.e., the CLA does not provide for a reduction, or "step-down", of the royalty rate if, as happened here, the last ███████ in any country expires less than ███████ after the date of the First Commercial Sale in such country of the product on which royalties are paid.

38. To the extent the CLA requires Ares to continue paying the same royalty on sales of ███████ (including Bavencio®) after the expiration of the last ███████ that it was required to pay during the life of the ███████, it is unenforceable under United States law because it violates the Supreme Court's *Brulotte* rule, which holds that such post-expiration payments constitute an improper extension of the duration of the patent monopoly. *Brulotte v. Thys Co.*, 379 U.S. 29 (1964), reaffirmed in *Kimble v. Marvel Entm't, LLC*, 576 U.S. __, 135 S. Ct. 2401 (2015).

39. Section 10.6 of the CLA, titled "███████", provides that: "███████████████████████████████████████████████████████████████



40. Section 9.6(e) of the CLA provides that "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇."

41. On February 15, 2019, Ares paid in full and on a timely basis to Dyax all royalties due under the current provisions of Sections 4.6 and 4.9 of the CLA for sales of Bavencio® made during the fourth quarter of 2018. In an accompanying letter, Ares notified Dyax in accordance with Section 9.6(e) of the CLA that those royalty payments were being paid under protest.

42. On February 20, 2019, Ares gave Dyax formal written notice in accordance with Section 10.2 of the CLA that the current provisions of Sections 4.6 and 4.9 are unenforceable under United States law.

43. Ares has continued to pay, and intends to continue to pay, in full and on a timely basis to Dyax royalties due under Sections 4.6 and 4.9 of the CLA in their current form for sales of Bavencio®. Ares will make those payments under protest until such time as Sections 4.6 and 4.9 are modified to render those provisions enforceable under United States law.

44. In Section 2.1 of the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇, "[CAT] hereby grants to Dyax and its Affiliates ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (on the terms of this Agreement) with ▇▇▇▇

███ (on the terms of Clause 3) under the ████████████████████████████████

████████████████████████████████████████████."

45. Bavencio® is a "████████████████" as that term is defined and used in the ████████████.

46. Section 6.1.2 of the ████████████ specifies that "With respect to ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████."

47. Section 6.3 of the ████████████ specifies that "████████████████████████████████████████████████████████████████████████████████████████████████████████."

48. Section 1.1 of the ████████████ defines "████" as "████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████."

49. The ████████████ does not contain a provision requiring a reduced ("step-down") royalty for ████████████ in the event that the ████████████ in that country expires before the end of the ████ period in which royalties under Sections 6.1.2 and 6.3 are to be paid by Dyax to CAT.


10

50. Section 11.1 of the ███████████ states that "█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████."

51. Upon information and belief, there are no remaining issued and unexpired patents within the ███████████████ as defined in the ███████████.

52. Section 12.1 of the ███████████ provides that "██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████" The provisions that are to survive termination of the Agreement do not include the ████████████████████████████.

53. In Section 1 of the ████████████████████, "████████████████████████████████████████████████████."

54. Section 4 of the ████████████████████ provides that "█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████."


## COUNT ONE: DECLARATORY JUDGMENT
## THAT SECTIONS 4.6 AND 4.9 OF THE CLA ARE UNENFORCEABLE

55. Ares repeats and realleges Paragraphs 1-54 herein.

56. Under Sections 4.6 and 4.9 of the CLA, Ares is obligated to pay a ▮▮▮▮ royalty to Dyax on ▮▮▮▮▮▮▮▮▮▮ (including Bavencio®) on a ▮▮▮▮▮▮▮▮▮▮ after the First Commercial Sale of each ▮▮▮▮▮▮ (including Bavencio®), even though the last ▮▮▮▮▮▮ expired in the United States and other countries before the end of the ▮▮▮ period measured from the First Commercial Sale of the ▮▮▮▮▮▮▮▮ in each respective country.

57. License provisions that require payment of a royalty at a rate after the expiration of the licensed patent rights that is the same as the rate that was required during the term of the licensed patents are "unlawful *per se*," and thus, unenforceable under United States law. *Brulotte*, 379 U.S. 29, 32, 33-34 (1964); *Kimble*, 576 U.S. ___, 135 S. Ct. 2401, 2405 (2015).

58. Sections 4.6 and 4.9 of the CLA, which require payment by Ares of the same ▮▮▮▮▮▮ royalty both before and after expiration of the licensed ▮▮ patents, without a "step-down" in the royalty rate, are unenforceable.

## COUNT TWO: REFORMATION OF THE CLA
## IN ACCORDANCE WITH SECTION 10.6

59. Ares repeats and realleges Paragraphs 1-58 herein.

60. Section 10.6 of the CLA requires that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."

61. The CLA should be reformed in accordance with Dyax's and Ares' mutual agreement to reform unenforceable provisions of the CLA as expressed in Section 10.6 to specify a step-down royalty rate consistent with the evidence adduced by the parties about an appropriate step-down in this case after the date of the expiration of the last to expire ███████ ████████████████████████████████████.

## COUNT THREE: DECLARATORY JUDGMENT THAT THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ENTITLES ARES TO A ROYALTY REDUCTION THAT IS PROPORTIONATE TO ANY ROYALTY REDUCTION THAT DYAX OBTAINS FROM CAT

62. Ares repeats and realleges Paragraphs 1-61 herein.

63. Under Sections 6.1.2 and 6.3 of the ███████████, Dyax is obligated to pay a royalty to CAT on Net Sales by Ares, Dyax's sublicensee, of ██████████ █████ (including Bavencio®) on a ████████████████████████ for █ ██ after the First Commercial Sale of each ████████████████ (including Bavencio®), even though the last ████████ expired in the United States and other countries before the end of the ██████ period measured from the First Commercial Sale of the ██████████████████ in each respective country. Upon information and belief, the royalty that Dyax pays to CAT on Ares' sales of ███████████████████ (including Bavencio®) under the ████████████ is ██ than the royalty that Ares pays to Dyax on such sales under the CLA.

64. License provisions that require payment of a royalty at a rate after the expiration of the licensed patent rights that is the same as the rate that was required to be paid during the term of the licensed patents are "unlawful *per se*," and thus, unenforceable under United States law. *Brulotte*, 379 U.S. 29, 32, 33-34 (1964); *Kimble*, 576 U.S. __ 135 S. Ct. 2401, 2405 (2015).

13

65. Sections 6.1.2 and 6.3 of the ▇▇▇▇▇▇▇▇, which require payment by Dyax to CAT of the same royalty both before and after expiration of the licensed ▇▇▇▇▇▇, without a "step-down" in the royalty rate, are unenforceable because they violate *Brulotte*.

66. The royalty provisions of the ▇▇▇▇▇▇▇▇ are unenforceable -- ▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇.

67. If Dyax obtains a reduction of the royalty it pays CAT under the ▇▇▇▇▇ ▇▇▇ on sales by its sublicensee Ares of ▇▇▇▇▇▇▇▇▇▇ (including Bavencio®), then there must be a proportionate reduction in the royalty Ares pays under the CLA to Dyax to reflect the reduction Dyax obtains. Requiring Ares to continue to pay ▇ to Dyax after Dyax obtains a reduction of its royalty rate would violate the covenant of good faith and fair dealing that is implied in every contract governed by Massachusetts law.

68. Under the law in almost every State that has adopted the Uniform Commercial Code and the Restatement Second of Contracts (including Massachusetts, the law of which governs the ▇▇▇, and New York, the law of which governs the ▇▇▇▇▇▇▇▇▇), a covenant of good faith and fair dealing is implied in every contract. It is a covenant that requires the contracting parties to deal with each other honestly, fairly and in good faith.

69. The Supreme Judicial Court of Massachusetts has held that every contract in Massachusetts is subject to an implied covenant of good faith and fair dealing that prohibits the parties from doing anything that would have the effect of destroying or injuring the right of the other party to receive and enjoy the benefits and fruit of the contract.

70. Upon information and belief, Ares, in communications with Dyax representatives, suggested an ███████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████.

71. The CLA does not expressly address the circumstance in which ████████
████████████████████████████████████████████████████████████████████████
████████████████.

72. In the event that Dyax is relieved, or obtains a reduction, of its obligation to pay royalties to ███ on Ares' sales of ████████████████████ (including Bavencio®), it would be unfair to require Ares to nevertheless pay the full ██ royalty to Dyax on Ares' sales of ████████████████████ (including Bavencio®).

73. If Ares and Dyax had anticipated and considered the possibility that Dyax would be relieved, or obtain a reduction, of its obligation to pay royalties to ███ on Ares' sales of ████████████████████ (including Bavencio®), then Ares and Dyax would have agreed to a provision requiring Dyax to extend to Ares ████████████████████████████████ ██████████ on Ares' sales of ████████████████████ (including Bavencio®).

74. In the event that Dyax is relieved, or obtains a reduction, of its obligation to pay royalties to ███ on it sublicensee Ares' sales of ████████████████████████ (including Bavencio®) on the ground that the royalty provision of the ████████████████ violates the *Brulotte* Rule, the implied covenant of good faith and fair dealing requires that Ares be awarded

at least a proportionate reduction in the royalty that it pays to Dyax on Ares' sales of ▮▮▮▮▮▮▮▮▮▮▮ (including Bavencio®).

### COUNT FOUR: DECLARATORY JUDGMENT THAT ARES DOES NOT HAVE TO PAY ROYALTIES TO DYAX BECAUSE ARES' SUB-LICENSE FROM DYAX HAS TERMINATED

75. Ares repeats and realleges Paragraphs 1-74 herein.

76. Royalty provisions Sections 6.1.2 and 6.3 of the ▮▮▮▮▮▮▮ violate *Brulotte* because they require Dyax to pay the same royalty after expiration of the last ▮▮▮ that it was required to pay during the life of the ▮▮▮▮. It consequently is unenforceable and no more payments by Dyax are required.

77. The ▮▮▮▮▮▮ agreement should be deemed ▮▮▮ according to Section 11.1, which provides that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

78. In accordance with Section 12.1 of the ▮▮▮▮▮▮▮, the license granted to Dyax does ▮▮▮▮▮▮▮▮.

79. The sublicense from Dyax to Ares is ▮▮▮ in accordance with Section 4 of the ▮▮▮▮▮▮▮▮, which provides that it ▮▮▮▮▮▮▮▮▮▮.

80. Ares Trading is no longer obligated to pay royalties to Dyax under the CLA in return for the rights granted under the ▮▮▮▮▮▮▮▮

16

PRAYER FOR RELIEF

WHEREFORE, Ares prays for judgment as follows:

a. a judgment in favor of Ares on each of Count One, Count Two, Count Three and Count Four of Ares' Complaint;

b. a declaration that Sections 4.6 and 4.9 of the CLA are unenforceable;

c. an Order reforming the CLA in accordance with Section 10.6 of the CLA to provide for a stepped-down royalty rate that is consistent with the evidence adduced by the parties about an appropriate step-down in this case for ▮▮▮ (including Bavencio®) to be paid on a ▮▮▮ after the date of expiration of the last to expire ▮▮▮ in each country in the world to bring the provisions of the CLA into compliance with United States law as set forth in *Brulotte*, 379 U.S. 29 (1964), and *Kimble*, 576 U.S. ___, 135 S. Ct. 2401 (2015);

d. a declaration that in the event Dyax is relieved, or obtains a reduction, of its obligation to pay royalties to ▮▮▮ on it sublicensee Ares' sales of ▮▮▮ (including Bavencio®) on the ground that the royalty provision of the ▮▮▮ violates the *Brulotte* Rule, the implied covenant of good faith and fair dealing requires that Ares be awarded at least a proportionate reduction in the royalty that it pays to Dyax on Ares' sales of ▮▮▮ (including Bavencio®);

17

e. an Order reforming the CLA to provide for a reduction in the royalty that Ares pays to Dyax on sales of ▮ (including Bavencio®) that is proportionate with, and consistent with the evidence adduced by the parties, any reduction in the royalty that Dyax pays to ▮;

f. a declaration that the sublicense from Dyax to Ares is terminated as a result of the termination of the ▮;

g. an Order reforming the CLA to provide for a reduction in the royalty that Ares pays to Dyax on sales of ▮ (including Bavencio®) that is commensurate with the termination of the sublicense from Dyax to Ares and that is consistent with the evidence adduced by the parties;

h. an Order requiring Dyax to return to Ares all royalties overpaid on sales of Bavencio® on a ▮ after the expiration of the last to expire ▮ in each country in the world; and

i. such other and further relief as this Court may deem just and proper.

Dated: December 19, 2019  /s/ *John G. Day*

John G. Day
JDay@ashbygeddes.com
Andrew Mayo
AMayo@ashbygeddes.com
Ashby & Geddes
500 Delaware Avenue – 8th Floor
Wilmington, DE 19801
Tel.: 302.654.1888
Fax: 302.654.2067

Of Counsel (*pro hac vice* applications to be filed):

Kevin J. Culligan
kculligan@maynardcooper.com
John M. Hintz
jhintz@maynardcooper.com
John P. Hanish
jhanish@maynardcooper.com
**MAYNARD, COOPER & GALE, P.C.**
The Fred F. French Building
551 Fifth Avenue – Suite 2000
New York, NY 10176
Tel: 646.609.9280
Fax: 646.609.9281

*Attorneys for Plaintiff Ares Trading S.A.*